655 S.E.2d 63

STATE of West Virginia ex rel. CITY OF CHARLES TOWN, Petitioner,

v.

The COUNTY COMMISSION OF JEFFERSON COUNTY, a Public Body Corporate of the State of West Virginia; and Frances B. Morgan, President and Member; Archibald M.S. Morgan, III, Member; C. Dale Manuel, Member; James T. Sutkamp, Member; and Gregory A. Corliss, Member; and Jennifer Maghan, Clerk, County Commission of Jefferson County, Respondents.

and

State of West Virginia ex rel. City of Charles Town, Petitioner,

v.

The County Commission of Jefferson County, a Public Body Corporate of the State of West Virginia; and Frances B. Morgan, President and Member; Archibald M.S. Morgan, III, Member; C. Dale Manuel, Member; James T. Sutkamp, Member; and Gregory A. Corliss, Member; and Jennifer Maghan, Clerk, County Commission of Jefferson County, Respondents.

and

State of West Virginia ex rel. First Charles Town Group, Inc., a West Virginia Corporation; Charles Town Limited, Partnership VI, a West Virginia Limited Partnership; Harry M. Kable and Carol F. Kable, Husband and Wife; Larry R. Fritts, Sr.; and Richard W. Weese and Maria V. Weese, Husband and Wife, Petitioners,

v.

The County Commission of Jefferson County, a Public Body Corporate of the State of West Virginia; and Frances B. Morgan, President and Member; Archibald M.S. Morgan, III, Member; C. Dale Manuel, Member; James T. Sutkamp, Member; and Gregory A. Corliss, Member; and Jennifer Maghan, Clerk, County Commission of Jefferson County, Respondents.

and

State of West Virginia ex rel. New Vision Properties II, Inc., a West Virginia Corporation; Michael C. Goode, Sr., and Sylvia D. Goode Husband and Wife; and John J. Gervasi and Linda S. Gervasi, Husband and Wife, Petitioners,

v.

The County Commission of Jefferson County, a Public Body Corporate of the State of West Virginia; and Frances B. Morgan, President and Member; Archibald M.S. Morgan, III, Member; C. Dale Manuel, Member; James T. Sutkamp, Member; and Gregory A. Corliss, Member; and Jennifer Maghan, Clerk, County Commission of Jefferson County, Respondents.

Nos. 33454, 33455, 33456, 33457.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2007.

Decided Oct. 26, 2007.

Ellen S. Cappellanti, Esquire, William J. Powell, Esquire, Jackson Kelly PLLC, Charleston, WV and James B. Crawford, III, Esquire, Crawford & Keller PLLC, Charles Town, WV, for City of Charles Town.

Peter L. Chakmakian, Esquire, Alice Anne Chakmakian, Esquire, Charles Town, WV, for First Charles Town Group, Inc.; Charles Town Limited Partnership VI; Harry and Carol Kable; Larry Fritts, Sr.; Richard and Maria Weese; New Vision Properties II, Inc.; Michael and Sylvia Goode; and John and Linda Gervasi.

Michael D. Thompson, Esquire, Prosecuting Attorney, Stephanie F. Grove, Esquire, Assistant Prosecuting Attorney, James Casimiro, III, Assistant Prosecuting Attorney, Office of Prosecuting Attorney of Jefferson County, Charles Town, WV, for County Commission of Jefferson County; Frances B. Morgan; Archibald M.S. Morgan, III; C. Dale Manuel; James T. Sutkamp; Gregory A. Corliss; and Jennifer Maghan.

Andrew P. Blake, Esquire, Ranson, WV, for Amicus Curiae, City of Ranson.

Dennis R. Vaughan, Jr., Esquire, Charleston, WV, for Amicus Curiae, West Virginia Municipal League, Inc.

Richard G. Gay, Esquire, Nathan P. Cochran, Esquire, Law Office of Richard Gay, LC, Berkeley Springs, WV, for Amicus Curiae, Contract Purchasers of Lots in the Windmill Crossing Subdivision Owned by New Vision Properties, Inc.

PER CURIAM.

These four consolidated cases are before this Court upon petitions for a writ of mandamus filed by the City of Charles Town; First Charles Town Group, Inc.; Charles Town Limited Partnership VI; Harry and Carol Kable; Larry Fritts, Sr.; Richard and Maria Weese; New Vision Properties, II, Inc.; Michael and Sylvia Goode; and John and Linda Gervasi (hereinafter collectively referred to as "petitioners") against the County Commission of Jefferson County; its members, Frances B. Morgan, Archibald M.S. Morgan, III, C. Dale Manuel, James T. Sutkamp, and Gregory A. Corliss; and Jennifer Maghan, Clerk of the County Commission of Jefferson County (hereinafter collectively referred to as "respondents"). The petitioners seek to compel the respondents to enter two Annexation Orders incorporating certain parcels of land into the corporate limits of the City of Charles Town. Having carefully considered the petitions for a writ of mandamus, the responses thereto, and the parties' arguments,[1] this Court grants the requested writ of mandamus.

1. At this juncture, we wish to acknowledge the participation and contribution of amici curiae, the City of Ranson, the West Virginia Municipal League, and the Contract Purchasers of Lots in the Windmill Crossing Subdivision Owned by New Vision Properties, Inc., which filed briefs in support of the petitioners.

2. W.Va.Code § 8-6-4 provides, in pertinent part:
(a) The governing body of a municipality may, by ordinance, provide for the annexation of additional territory without ordering a vote on the question if: (1) A majority of the qualified voters of the additional territory file with

## I.

### FACTS

Pursuant to W.Va. Code § 8-6-4 (2001),[2] the owners of certain parcels of land located in Jefferson County, West Virginia, sought to have their property annexed by the City of Charles Town. Accordingly, two ordinances were proposed in January 2007. One of the proposed ordinances pertained to the annexation of six parcels of land which are owned by Charles Town Limited Partnership VI, First Charles Town Group, Inc., Richard and Maria Weese, Harry and Carol Kable, and Larry Fritts, Sr. The other proposed ordinance concerned the annexation of seventeen parcels of land which are owned by New Vision Properties II, Inc., Michael and Sylvia Goode, and John and Linda Gervasi.

Both ordinances were first read at a meeting of the City Council of Charles Town on January 16, 2007. The second reading of the ordinance concerning the seventeen parcels of land occurred on February 5, 2007, at a meeting of the City Council, and at that time, passage of the ordinance was certified because it was determined that the petition was made by a majority of freeholders and a majority of qualified voters within the additional territory to be annexed in accordance with the requirements of W.Va.Code § 8-6-4(a).[3] Accordingly, the ordinance was entered into the City's journal as required by W.Va.Code § 8-6-4(g).[4] The second reading of the ordinance pertaining to the six parcels of land occurred on February 20, 2007, at a meeting of the City Council, and at that time, passage of the ordinance was certified because it was again determined that the petition was made by a majority of freeholders and a majority of qualified voters within the

the governing body a petition to be annexed; and (2) a majority of all freeholders of the additional territory, whether they reside or have a place of business therein or not, file with the governing body a petition to be annexed.

3. *See* note 2, *supra*.

4. W.Va.Code § 8-6-4(g) states, in pertinent part:
If satisfied that the petition is sufficient in every respect, the governing body shall enter that fact upon its journal . . . .

additional territory to be annexed. The ordinance was also entered into the City's journal.

On March 8, 2007, a proposed order was provided to the County Commission of Jefferson County approving and confirming the annexation of the seventeen parcels of land. On April 12, 2007, a proposed order was provided to the County Commission of Jefferson County approving and confirming the annexation of the six parcels of land. Both orders were provided to the County Commission for entry in accordance with the provisions of W.Va.Code §§ 8–6–3 and 8–6–4.[5] Thereafter, the County Commission refused to enter the orders. On May 1 and 2, 2007, these petitions for a writ of mandamus were filed with this Court.

## II.

### STANDARD FOR ISSUING A WRIT OF MANDAMUS

■ As set forth above, the petitioners seek a writ of mandamus directing the County Commission of Jefferson County to enter the Annexation Orders at issue. This Court has long held that, " ' "Mandamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syllabus Point 1, *State ex rel. Allstate Insurance Co. v. Union Public Service District,* 151 W.Va. 207, 151 S.E.2d 102 (1966).' Syl. Pt. 4, *State ex rel. Affiliated Constr. Trades Found. v. Vieweg,* 205 W.Va. 687, 520 S.E.2d 854 (1999)." Syllabus Point 2, *State ex rel. Public Service Comm'n of West Virginia v. Town of Fayetteville, Municipal Water Works,* 212 W.Va. 427, 573 S.E.2d 338 (2002). It is well-established, however, that:

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl-

labus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

Syllabus Point 2, *Stapleton v. Board of Educ. of County of Lincoln,* 204 W.Va. 368, 512 S.E.2d 881 (1998).

■ The respondents have asserted that the petitioners should have first sought relief in the circuit court. We find no merit to this argument because "[u]nder *W.Va. Const.,* art. VIII, §§ 3, 4 this Court and all circuit courts of the State have concurrent original jurisdiction in mandamus." *State v. Coleman,* 167 W.Va. 536, 538, 281 S.E.2d 489, 489 (1981). *See also State ex rel. Silver v. Wilkes,* 213 W.Va. 692, 697, 584 S.E.2d 548, 553 (2003). Thus, having set forth the standard for the issuance of a writ of mandamus, we now consider the parties' arguments.

## III.

### DISCUSSION

■ The issue presented in this case is whether a county commission has authority to refuse to enter an annexation order presented to it by a municipality pursuant to W.Va.Code § 8–6–4. The petitioners contend that the plain language of the statute as well as this Court's prior case law clearly establish that the Commission's role with regard to annexation of property under W.Va.Code § 8–6–4 is purely ministerial. In other words, the petitioners assert that once the municipality determines that the annexation petition is sufficient and forwards it to the Commission, the Commission must enter the annexation order.

By contrast, the respondents argue that the County Commission must certify that the annexation was made "in the manner required by law," and when the municipality fails to comply with the annexation statutes, the County Commission has no duty to enter the annexation order. In support of their argument, the respondents rely upon the language in W.Va.Code § 8–6–3 which must be used in the annexation order.[6] The respon-

---

5. The relevant language of these statutes is set forth in the discussion section of this opinion.

6. The language to be used in an annexation order entered by a county commission is set forth in W.Va.Code § 8–6–3 (1969) as follows,

dents contend that the proposed annexation is not reasonable, that it does not comply with the contiguity requirement set forth in W.Va.Code § 8–6–l(a) (2001),[7] and that the City failed to verify the total number of eligible freeholders in accordance with W.Va. Code § 8–6–4(e).[8]

■ This Court first considered the role of county commissions with regard to annexation under Article 6 of Chapter 8 of the West Virginia Code in *Matter of City of Morgantown*, 159 W.Va. 788, 226 S.E.2d 900 (1976). In that case, the County Commission of Monongalia County rejected the City of Morgantown's annexation of property by minor boundary adjustment pursuant to W.Va. Code § 8–6–5 (1969). The City petitioned the circuit court for a writ of error which was granted. The Commission then filed a writ with this Court. In discussing the Commission's function and the nature of its powers in an annexation proceeding, this Court explained that,

> [The] annexation statutes, now contained in article six of chapter eight of the Code of West Virginia, provide three methods for properly altering municipal boundaries by annexation of additional territory. Section 2 provides for annexation upon an election initiated by a petition. Section 4 provides for annexation without an election upon petition of sixty percent of the voters and freeholders of the additional territory.[9] Section 5 authorizes annexation "by minor boundary adjustment."
>
> Through the enactment of these general laws, the Legislature delegated certain functions and responsibilities to the county commission of each county. A county

commission is required to perform a ministerial function when it enters an order reflecting the change in boundaries after municipal authorities certify compliance with the statutory procedures of Sections 2 or 4. The powers delegated to a county commission under Section 5, however, are broader in scope and encompass more than the performance of a ministerial duty.

*Id.*, 159 W.Va. at 792, 226 S.E.2d at 903 (footnote omitted). While it was determined that a county commission has additional functions when a municipality seeks to annex by minor boundary adjustment, this Court held in Syllabus Point 2 of *Matter of Morgantown* that, "The powers exercised by a county commission with regard to municipal annexation are wholly statutory and it can exercise no other powers except those implicit in the specific grant."

■ As set forth above, the petitioners sought to annex property in this case pursuant to W.Va.Code § 8–6–4. The statute provides, in pertinent part:

> If satisfied that the petition is sufficient in every respect, the governing body shall enter that fact upon its journal and forward a certificate to that effect to the county commission of the county wherein the municipality or the major portion of the territory thereof, including the additional territory, is located. *The county commission shall thereupon enter an order as described in the immediately preceding section [§ 8–6–3] of this article.* After the date of the order, the corporate limits of the municipality shall be as set forth therein.

---

7. W.Va.Code § 8–6–l(a) provides that, "Unincorporated territory may be annexed to and become

"A certificate of the governing body of the municipality of .......... was this day filed showing that an annexation has been made, in the manner required by law, to the corporate limits thereof, and that by such annexation the said corporate limits are as follows:

"Beginning at (here recite the boundaries as changed). It is, therefore, ordered that such annexation to said corporate limits be, and the same is hereby approved and confirmed, and the clerk of this court is directed to deliver to the said governing body a certified copy of this order as soon as practicable after the rising of this court."

part of a municipality contiguous thereto only in accordance with the provisions of this article."

8. W.Va.Code § 8–6–4(e) states, in relevant part, that, "It shall be the responsibility of the governing body to enumerate and verify the total number of eligible petitioners, in each category, from the additional territory."

9. W.Va.Code § 8–6–4 has since been amended to require the petition to be made by a majority of the qualified voters and a majority of all freeholders of the additional territory. *See* note 2, *supra.*

W.Va.Code § 8-6-4(g) (emphasis added). This Court has held that, "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). In addition, this Court has held that, " 'The word "shall" in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation.' Syl. pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969)." Syllabus Point 5, *Rogers v. Hechler*, 176 W.Va. 713, 348 S.E.2d 299 (1986). The language of W.Va.Code § 8-6-4(g) is clear and unambiguous. The county commission is required to enter the annexation order when the municipality certifies that the annexation petition is sufficient

■ We reject the Commission's argument that it has a duty to determine whether or not the annexation complies with the applicable statutes. As we explained in *City of Morgantown*, "Article six sufficiently identifies those who have an interest in annexations as including the governing body of the municipality and the qualified voters and freeholders of the municipality and of the territory to be annexed." 159 W.Va. at 794, 226 S.E.2d at 904. "A county commission ... has no interest, personal or official, in the municipal annexation matters which come before it other than to administer the law[.]" Syllabus Point 5, in part, *City of Morgantown*. Thus, the County Commission of Jefferson County should have entered the Annexation Orders presented to it by the City of Charles Town.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the writ of mandamus requested by the petitioners is granted, and the respondents are hereby directed to enter the Annexation Orders.

Writ granted.

Justices STARCHER, ALBRIGHT and BENJAMIN concur and reserve the right to file concurring opinions.

ALBRIGHT, Justice, concurring:

I concur in the result in this case, but write separately to state one qualification to the majority opinion's conclusion that "[t]he county commission is required to enter the annexation order when the municipality certifies that the annexation petition is sufficient." Op. at 69.

The thrust of this statement is that the county commission's duties are wholly and strictly ministerial and are defined by statute. The difficulty with this statement is that it leaves the impression that the county commission must enter an annexation order even when it contains findings that are wrong, and that the county commission has no option in any circumstances to seek correction of an apparent error. I respectfully suggest that the Constitution of West Virginia vests in this Court and in the circuit courts jurisdiction over extraordinary remedies where no adequate remedy of law is available. *See* W.Va. Const. art. VIII, § 3 ("The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari."); W.Va. Const. art. VIII, § 6 ("Circuit courts shall have original and general jurisdiction ... of proceedings in habeas corpus, mandamus, quo warranto, prohibition and certiorari....").

I respectfully submit that a public official charged with the performance of a ministerial duty has the right to challenge whether or not the conditions precedent to the performance of that duty have been met and, failing any other remedy at law, may invoke the constitutional jurisdiction of the circuit courts and this Court by way of a writ of certiorari to cause judicial review of the proceedings wherein the conditions precedent were found to exist but there is doubt they in fact do exist.

In the instant case, the very statute at issue expressly provides one instance in which certiorari may be invoked to review a determination made by a city council which is a condition precedent to the city's adoption of

an annexation ordinance. Specifically, the statute provides:

The determination that the requisite number of petitioners have filed the required petitions shall be reviewable by the circuit court of the county in which the municipality or the major portion of the territory thereof, including the area proposed to be annexed is located, upon certiorari to the governing body in accordance with the provisions of article three [§§ 53-3-1 et seq.], chapter fifty-three of this code. W.Va.Code § 8-6-4(c). Moreover, in the succeeding section of our municipal code, providing for annexation by minor boundary adjustment by application, the county commission is expressly granted both discretion and the right to seek judicial review.[1]

When there is no alternative judicial remedy prescribed, extraordinary relief through certiorari is clearly a means available to county commissions to seek review of perceived facial errors or legal irregularities in municipal annexation proceedings leading up to adoption of ordinances or applications.[2] *See* Syl. Pt. 1, *Reynolds Taxi Co. v. Hudson*, 103 W.Va. 173, 136 S.E. 833 (1927) ("Certiorari is the appropriate process to review the proceedings of bodies and officers acting in judicial or quasi-judicial capacity, where no other remedy is provided."); 14 Am.Jur.2d *Certiorari* § 17 (use of writ of certiorari to correct errors of law appearing on the record of a quasi-judicial proceeding or to inquire into whether the actions of a public body were taken in accord with the essential requirements of the law). *See also Ashworth v. Hatcher*, 98 W.Va. 323, 128 S.E. 93 (1924); *Carroll Hardwood Lumber Co. v. Kentucky River Hardwood Co.*, 94 W.Va. 392, 119 S.E. 162 (1923); *Morgan v. Ohio River R.R.*, 39 W.Va. 17, 19 S.E. 588 (1894); *Long v. Ohio River R.R.*, 35 W.Va. 333, 13 S.E. 1010 (1891); *Beasley v. Town of Beckley*, 28 W.Va. 81 (1886); *Poe v. Marion Mach. Works*, 24 W.Va. 517 (1884); *Meeks v. Windon*, 10

W.Va. 180 (1877) (all finding that certiorari lies when there is an error in justice and no other means of review is prescribed).

I concur with the majority opinion in this case because the responses tendered by the county commission related to the merits of the ordinance and not to errors involving the conditions precedent to the adoption of the subject ordinance.

STARCHER, J., concurring:

While I concur with the result in this case, I write separately to call attention to issues raised that I believe require legislative attention.

The Legislature needs to address the confusing statutory role for county commissions and the limited nature of the judicial review provisions in the annexation statutes generally. As the majority opinion acknowledges and discusses, there are three separate procedures which may be employed by municipalities in the annexation process.

First, *W.Va.Code*, 8-6-2(a) [2003] provides for annexation upon election initiated by a petition of "five percent or more of the freeholders of a municipality."

Second, *W.Va.Code*, 8-6-4(a) [2001] provides for annexation without an election upon a petition of a "majority of the qualified voters ... and a majority of all freeholders of the additional territory...."

Third, *W.Va.Code*, 8-6-5(a) [2001] provides for annexation by "... making a minor boundary adjustment...."

In the first instance of *annexation by election*, the order of the municipality for the election and the election itself is reviewable by the circuit court pursuant to *W.Va.Code*, 8-6-2(f). Assuming the election is valid, the county commission, upon receiving certification of the election results from the municipality, is required to enter an order approving the annexation. *See W.Va.Code*, 8-6-2(1) and *W.Va.Code*, 8-6-3 [1969]. Under this

---

1. *See* W.Va.Code § 8-6-5(d) and (i).

2. I am mindful of the case of *Garrison v. City of Fairmont*, 150 W.Va. 498, 147 S.E.2d 397 (1966), in which this Court held that certiorari is not available to challenge a municipal ordinance.

What is at stake in the instant case is not the substance of the ordinance but the mandatory proceedings and findings stipulated in the statute as conditions precedent to the adoption of the ordinance.

procedure, no discretion appears to be granted to the county commission in entering an order approving the annexation. Furthermore, the county commission is not authorized under the statute to challenge the election process.

In the second instance of *annexation* without election *by petition*, the circuit court is empowered to review by *certiorari* whether or not "... the requisite number of petitioners have filed...." See *W.Va.Code*, 8–6–4(c). Upon certification by the municipality that the petition is sufficient in all respects, the county commission is required to enter an order approving the annexation. *See W.Va. Code*, 8–6–3 and *W.Va.Code*, 8–6–4(g). Again, no discretion appears to be granted to the county commission in entering an order approving the annexation. Furthermore, it is unclear under the statute whether the county commission may challenge any aspect of the annexation process.

In the third instance of *annexation by minor boundary adjustment*, the county commission is granted extensive review authority. W.Va.Code, 8–6–5(d) provides:

> Upon receipt of a complete application for annexation by minor boundary adjustment, the county commission shall determine whether the application meets the threshold requirements for consideration as a minor boundary adjustment including whether the annexation could be efficiently and cost effectively accomplished under section two [annexation by election] or four [annexation by petition] of this article.

*W.Va.Code*, 8–6–5(f) requires the county commission to examine seven factors in making a decision on whether or not to approve the application for annexation by minor boundary adjustment, including contiguity, inclusion of highways, public support, and the *best interest of the county as a whole*. The municipality may appeal to the circuit court a county commission decision—in which case, according to the language of the statute, the county commission may participate as a party. *W.Va.Code*, 8–6–5(i). However, by this Court's decision in the *Matter of City of Morgantown*, 159 W.Va. 788, 226 S.E.2d 900 (1976), the county commission's power to par-

ticipate in an appeal from a circuit court decision was denied.

The current statutory framework for annexation suggests that the Legislature intended to vest significant power in the voters and freeholders in the territory to be annexed when annexation is undertaken by election or petition. Generally speaking "power to the people" is a concept with which I agree; however, in these instances the statutory framework for annexation is effectively allowing a sub-set of the whole county population to trump zoning ordinances validly enacted by a county commission that was elected by the entire voting population of a county.

Currently, statutes *W.Va.Code*, 8–6–2 (annexation by election) and *W.Va.Code*, 8–6–4 (annexation by petition), as well as our decision in this case, have the practical effect of permitting a small group of people with municipal approval to thwart the will of a county commission which has constitutionally authorized powers to promote the orderly development of the county. Still, when annexation is undertaken by a municipality by minor boundary adjustment, the Legislature has granted broad discretion to county commissions and, most importantly, the authority to review the matter with respect to "[w]hether the proposed annexation is in the best interest of the county as a whole." *See W.Va.Code*, 8–6–5(f)(7). This legislative framework is further complicated by the mixed role the Legislature has provided to county commissions in the judicial review process.

The problems with the current statutory language are also exacerbated when considered in light of other legislative powers granted to county commissions for planning and zoning. *See generally W.Va.Code*, 8A–1–1, *et seq*. The county commission briefed but did not argue or emphasize its contention that the annexation statutes may be unconstitutional because of statutory interference with county police powers under *W.Va. Const.* Art IX § 11. In dispelling any notion about whether or not zoning is a police power, this Court stated in *Par Mar v. City of Parkersburg*, 183 W.Va. 706, 709, 398 S.E.2d 532, 535 (1990) that "[a] zoning ordi-

nance, as an exercise of the broad police power of the local governing body, is rebuttably presumed to be valid."

While currently Jefferson County is the only West Virginia county having comprehensive planning and zoning, there have been other attempts to provide for such. And, several other counties in the State currently have limited planning and zoning activities. Intuitively, I would suggest that as Counties in our State experience accelerated growth in population, the pressure to engage in planning and zoning activities will increase. As growth and changes occur, and as more and more land use controls are enacted, our courts will, in turn, be called upon to decide questions revolving around planning and zoning. While these tensions may be primarily between municipalities and county commissions, the private sector will also be affected.

Many of the court decisions that will be called for over the next several years that involve land use will relate to matters of public policy. Therefore, before even more questions such as these arise, I believe that the Legislature should step in and establish the public-policy framework for resolving the disputes, rather than placing the judicial system in the role of establishing the framework for resolution.

The inconsistency of roles for the county commission in the three annexation procedures is apparent, and in my judgment should be refined and clarified. It is totally inconsistent to, on the one hand, grant to the county commission the authority to approve or deny annexation by minor boundary adjustment based primarily on "[w]hether the proposed annexation is in the best interest of the county as a whole," *W.Va.Code*, 8–6–5(f)(7), and yet, on the other hand, reduce the county commission's role to that of a simple ministerial function when the process is by election or petition. The interest of the county commission, particularly if the county has enacted county-wide zoning, is the same regardless of the method of annexation. It is hard to understand why the county commission should be relegated to the role of "rubber stamping" the activity of another agency or collection of citizens—not even having the authority to review the validity of the pro-

cess—when the annexation is either by election or petition. The Legislature should review these provisions and clearly state a consistent policy-role for the county commission to exercise in all three approaches.

The Legislature also needs to address the need for a clearly-defined procedure for county commissions, municipalities, and other interested parties to seek judicial review regardless of the annexation procedure employed. I would suggest that the county commission be provided with specific statutory authority to seek judicial review when a county commission perceives insufficiencies, deficiencies, or conflicts with ordinances, rules, statutes, or constitutional provisions. Justice Albright ably addressed this aspect of the case in his concurring opinion with which I agree. I also agree with Justice Albright that the majority opinion does not foreclose the possibility of a county commission seeking a remedy through extraordinary relief. I would, however, urge that the more prudent course would be for the Legislature to enact comprehensive reform of the annexation statutes.

Accordingly, I concur.

BENJAMIN, Justice, concurring:

I agree with the majority that a county commission does not have the discretion to refuse to enter an annexation order when a municipality has certified that the annexation petition is sufficient. However, I write separately to emphasize that a county commission is not without remedy where it is alleged that a municipality has approved an annexation petition that may not meet statutory requirements regarding the requisite number of petitioners requesting annexation of the territory. West Virginia Code § 8–6–4(c) (2001), specifically provides:

> The determination that the requisite number of petitioners have filed the required petitions shall be reviewable by the circuit court of the county in which the municipality or the major portion of the territory thereof, including the area proposed to be annexed is located, upon certiorari to the governing body in accordance with the provisions of article three, chapter fifty-three of this code.

Thus, instead of simply refusing to enter the annexation order, the County Commission of Jefferson County should have challenged the City of Charles Town's approval of the annexation petition in circuit court. Under our law, it was for the circuit court, not the county commission, to determine if the City of Charles Town improperly certified or approved the annexation petition.